## DRURY & WISEMAN vs. WHITE.

1. A verdict will not be set aside because of the failure of the Court to instruct the jury, when no instructions were asked.

2. If instructions are asked which have no relation to the issue, they should not be given, although they may contain correct abstract principles.

## APPEAL from Montgomery Circuit Court.

CAMPBELL & FORSHEY, *for Appellants, insist:*

1st. Drury and Wiseman as *Post Masters* are only bound for ordinary care and diligence, and

*Drury & Wiseman* vs. *White.*

:are not bound for the same degree of care that is required of common carriers. They as Post Masters are not insurers of property as common carriers are. Story on Bailment, sections 461—2—3.

2nd. Benjamin White, by his agent Joseph C. White, was guilty of a gross fraud in putting a five-fold letter in the Post Office, with two hundred dollars, carefully folded and pressed to give it the appearance of a single letter, and concealing the fact that it contained money, in order that it might be carried as a single letter, and thus enable him to cheat the Government and the Post Masters, and mislead and deceive them as to the degree of care and diligence that ought to be used by them, and on this account alone he cannot recover. Story on Bailments, sections 14—15 —77—78—79—186—565; Jones on Bailments, 38—39. 2 Kent, 603—4.

3rd. White the plaintiff, and his agent, were guilty of negligence in this, that the letters, numbers, dates and description of the four bank notes pretended to have been sent were not preserved, so as to enable the Post Masters to trace them up; notice of the loss was not communicated to Drury and Wiseman in due time,—no information was given to Drury in relation to the description of said notes when asked for by him, and no efforts were made by White to trace out the money alleged to have been mailed.

4th. There is no evidence whatever against Wiseman, one of the defendants, and for that reason alone the joint verdict should have been set aside, and the joint judgment is erroneous.

5th. When many months have transpired, Post Masters cannot be expected to remember, much less to prove to whom they have delivered the multitude of single letters that have come to their hands, and even full proof that such a letter has come to an office is not sufficient to compel them to prove what has become of it, nor to make him liable for the money *secreted* therein.

6th. The liability of a Post Master must be determined after a proper consideration of the nature of his office and duties, the usages of the country, the public convenience, and the utter impossibility of such officer accounting specially for every *single* letter that he receives and hands out.

7th. The fact that the letter in controversy was marked as a single letter on its back, on the way bill, on the books of the Post Master at Poolsville, and on his returns to the General Post Office, are sufficient to raise the presumption that it actually was a single letter, and Drury and Wiseman were bound to presume that the Post Master had performed his duty, and that it was marked truly and not *falsely*.

8th. The Circuit Court erred in refusing to give to the jury the instructions asked for by the defendants, and the refusal to give them in the presence of the jury was calculated to deceive the jurors.

9th. If the instructions given contain correct legal propositions, and there is testimony in the record, to which such instructions will properly apply, it is not necessary to use any form of words to state specifically that the instructions refer to the case on trial.

10th. If the instructions were objectionable merely on account of their form or phraseology, it was the duty of the Circuit Court to have suggested a modification thereof, or to have given instructions to the jury in proper form in lieu of those refused.

11th. Drury and Wiseman as Post Masters, acting under oath, and having fair characters, must be presumed to have done their duty properly, and fraud and gross misconduct cannot be fairly presumed against them, from the mere fact that a single letter has arrived at their office, and that when applied to several months afterwards they cannot recollect to whom it was delivered.

CAVE, *for Appellee, insists:*

1st. There is no error in the Court's refusing to give the instructions prayed for by the defendants, because the whole of said instructions are mere abstract propositions calculated to inveigle and mlead a jury, and are based upon no particular evidence given in said cause, and not one of

them hypothetical. See 3rd vol. Mo. Reps. 411—382; 1st vol. 318; 8th vol. 224—228; 6th vol. page 6. The defendants are not prejudiced by the Court's refusing to give said instructions. See 1st vol. Mo. Reps. 505; do. 318. See 2nd Marshall on hypothetical instructions, 197.

2nd. The Court did not err in refusing to set aside verdict and judgment and grant a new trial, because the weight of evidence strongly preponderates in favor of the verdict. See the evidence on this point, and this Court will not disturb a verdict for a slight preponderance of evidence against it. See 1st vol. Mo. Reps. page 14; 5th vol. Mo. Reps. 489—529. 2nd Marshall, 42; do. 114, and 7th vol. Mo. Reps. 579. And these authorities we confidently say will be conclusive, and that this Court will affirm the judgment of the Court below.

NAPTON, J., *delivered the opinion of the Court.*

This was an action on the case brought by Benjamin White against Charles J. Drury, Post Master, and Joseph P. Wiseman, his deputy, to recover two hundred dollars, alleged to have been sent by mail to the plaintiff, and to have been lost through the carelessness and negligence of defendants. The third count of the declaration was in trover. The plea was not guilty. A trial was had in the Circuit Court of Montgomery County, and the verdict was for the plaintiff; a motion to set the verdict aside was overruled, and an appeal was taken to this Court.

It appeared from the testimony given on the plaintiff's behalf, that Joseph C. White, of Maryland, wrote a letter to the plaintiff enclosing therein four fifty dollar bills on the Bank of Baltimore, and directing it to Danville, Montgomery County, Missouri, deposited it in the hands of Edmund Fallen, the sub-deputy Post Master at Poolsville, Montgomery County, Maryland. This was on Saturday, the 20th day of January, 1844, and was done in presence of a witness, who saw the said deputy Post Master envelope the letter and direct it to Danville, &c., observing that it would go sooner when directed in that way than when sent through a distributing office. It appears, also, from the mail books of the office at Poolsville, that a letter was mailed at that office on the 20th January, 1844, directed to Danville, Montgomery County, Mo., and also another on the 23d January, 1844, directed to the same office in Missouri. These letters were each charged with single postage, and marked 25 cents on the outside. A way bill was produced on the trial, supposed to be the one accompanying the letter of the 20th January, 1844, which it seems from the testimony of *Saunders*, a traveling post office sub-agent, was procured from Brown his principal, and by Brown procured from the defendant at Washington. The clerk who attended to this branch of business in the post office department, stated that he found a post bill purporting to be from Poolsville to Danville, dated 20th January, 1844, and calling for an unpaid letter, (25 cents,) but could find no post bill

for the letter sent on the 23rd of same month and year. The Auditor of the Treasury for the post office department stated that his books showed the returns from Poolsville from January to March, 1844, and among them two unpaid letters directed to Danville, one sent on the 20th January, and the other on the 23rd, but the returns from Danville showed the receipt of only one letter on the 8th February from Poolsville, dated 20th January, 1844, and marked unpaid, (25 cents.)

It appears that the post office agent called upon Drury and Wiseman in the summer of 1844, and examined the transcript of mails received at Danville during the months of January and February. He found an entry made February 9th, of a letter received from the office of Poolsville, dated 20th January. This entry was, as Drury informed the agent, in the hand-writing of Wiseman. No entry was found of any receipt of the letter of the 23rd January. By enquiries it appeared that the letter written on the 23rd, and which was addressed to Mrs. Gott, had arrived, and was obtained from the person to whom it was directed.

A letter was read upon the trial from Drury to Joseph C. White, dated July 23rd, 1844, enquiring of said White as to the numbers, dates, &c., of the bank notes he had transmitted to the plaintiff. In this letter the writer acknowledged the great probability that the letter had reached his office, and desired the numbers of the notes that he might trace them up if practicable.

Evidence was given to show that the office at Danville was carelessly conducted, and was kept in such a situation in the store room of said defendants that letters might be abstracted from the case or box in which they were kept without detection. Evidence was also given to show by the acknowledgements of one of the defendants, that neither the plaintiff nor any of his children or servants had gotten the letter directed to him from Poolsville and containing the notes aforesaid.

The defendants asked the following instructions : —

1st. The jury are not bound to credit the testimony of witnesses whose character for truth has not been assailed by other witnesses, but must give to every witness the credit to which *in their judgment* he is entitled under the circumstances.

2nd. The jury have the right to give just such credit to the testimony of a witness as they may think proper.

3rd. Although a witness is not incompetent to testify, yet his relation to the parties or to the subject matter of the suit may be considered by the jury as affecting his credibility, and they may give him just such credit as they may think proper.

4th. That it is *prima fasie* evidence that a letter is single which has been charged single postage by the Post Master mailing it, and must be so received until it is proved to the contrary by sufficient credible testimony.

5th. A witness can only prove his own hand-writing, if it has been out of his possession in the same manner that others acquainted with it can do, to the best of his knowledge and belief.

The Court refused to give these instructions, and the defendants excepted.

Only two questions seem to arise upon the record in this cause; the first being whether this Court will set aside the verdict upon the ground that it is not sustained by the evidence, and the second growing out of the instructions.

The last point can scarcely admit of argument. The instructions, however correct they may be in the abstract, appear to have no bearing upon any controverted or controvertible point in the case, and could therefore only have mislead the jury had they been given. The questions at law, which were really involved in the case, remained without any exposition on the part of the Court.

Under the circumstances, this Court would not be authorized to set aside the verdict. The case was submitted to a jury without instructions. None were asked which could throw any light upon any legal question which the testimony raised. The evidence seemed to establish beyond controversy that a letter was written by Joseph C. White to his brother in Missouri, enclosing $200 in Bank of Baltimore notes, and that this letter reached the post office at Danville; there was proof to show that the plaintiff did not receive this letter. The question of negligence was then left to the jury without any instructions on this point being asked by either party. It is too late now to say that the jury were not properly instructed in the law. It will not answer for a party to lie by and await the chances of a favorable verdict, and when the chance has proved against him, to turn round and complain of the failure of the Court to give a correct exposition of the law to the jury. When such a course is taken, we must infer that the party preferred leaving the law and fact to the decision of the jury. There are plain cases, it is true, in which this Court has interfered, but we do not regard this as one of them.

The other Judges concurring, the judgment is affirmed.