# HENRY SCHLOTZHAUER, Respondent, v. MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, Appellant.

### Kansas City Court of Appeals, May 6, 1901.

1. **Railroads: KILLING STOCK: DEMURRER TO EVIDENCE.** The evidence relating to whether a mule entered the right of way through a farm gate or over the railway fence is considered and held sufficient to send the case to the jury.

2. ———: ———: **EVIDENCE: INSTRUCTION: TRIAL PRACTICE.** Where the evidence is of a character that the jury can not tell what caused the injury, an open gate or defective fence, the finding should be for the defendant; but the defendant should ask such instruction, and if he does not, can not complain.

3. ———: ———: **SCIENTER: TRIAL PRACTICE.** Before a railroad can be held liable for killing stock entering its right of way by reason of a defective fence, it must be shown that it had notice of the defects or that they had existed such length of time that the law presumed notice; but the court is not bound so to instruct unless so requested; and the evidence in this case tends to show defects for such a time that the defendant is presumed to have had knowledge thereof.

4. ———: ———: **INSTRUCTIONS: SINGLING OUT FACTS.** An instruction set out in the opinion, and relating to a lawful fence, is condemned as singling out certain facts and fixing defendant's liability thereby.

Appeal from Cooper Circuit Court.—*Hon. T. B. Robinson,* Judge.

REVERSED AND REMANDED.

*Geo. P. B. Jackson* for appellant.

Vol 89 app—5

(1) The court erred in refusing to sustain the demurrer at the close of the plaintiff's evidence. Also in refusing to give the peremptory instruction to find for the defendant at the close of all the evidence, because there was no evidence in the case sufficient to justify the conclusion that the plaintiff's mule entered upon the right of way by passing through or over the fence. Walton v. Railroad, 32 Mo. App. 634. (2) The plaintiff's instructions were a comment upon the evidence, and assumed as true, controverted matters, in that they selected certain expressions of the witnesses concerning the height of the fence, and so incorporated the suggestions, statements or estimates into the instructions as to give them undue weight, and to induce the jury to believe that such statements of the witnesses were accepted as established facts to the effect that in some places the fence was not more than three or four feet high, and in others that it was not more than two and a half or three feet high. Rice v. McFarland, 41 Mo. App. 489, 496. (3) Plaintiff's instructions disregard the element of notice to defendant of a defective condition of the fence. There was a conflict in the evidence as to how long the fence was defective, if at all, and the jury were not required to find that defendant either knew or had the opportunity to know of the alleged defective condition. The silence of the instructions on this point is reversible error. Vinyard v. Railroad, 80 Mo. 92; Clardy v. Railroad, 73 Mo. 576; Foster v. Railroad, 44 Mo. App. 11; Townsley v. Railroad, 89 Mo. 31; Fitterling v. Railroad, 79 Mo. 504; Case v. Railroad, 75 Mo. 668; Walthers v. Railroad, 78 Mo. 617, 622; Young v. Railroad, 82 Mo. 427; Laney v. Railroad, 83 Mo. 466; Maberry v. Railroad, 83 Mo. 667; King v. Railroad, 90 Mo. 520. (4) Instructions should cover the whole case, and should be so framed as to present the case to the jury on all the evidence, and not on a partial view of it. Brownfield v.

Ins. Co., 26 Mo. App. 390; Hohstadt v. Daggs, 50 Mo. App. 240; Machine Co. v. Bobbst, 56 Mo. App. 427; Carder v. Primm, 60 Mo. App. 423; Carroll v. Railroad Co., 60 Mo. App. 465; Mallmann v. Harris, 65 Mo. App. 127; Link v. Westerman, 80 Mo. App. 592.

*Russell Harriman, John Cosgrove* and *James W. Cosgrove* for respondent.

(1) The trial court's failure to instruct the jury upon the length of time the fence-wires were down, was not error. It was not incumbent upon the trial court to instruct upon all questions of law arising upon the evidence, unless requested so to do. It discharged its duties by giving or refusing such instructions as were prayed. Farmer v. Farmer, 129 Mo. 530; Nolan v. Johns, 126 Mo. 159. (2) The fence, at the point of the mule's entrance upon defendant's right of way, was not of the statutory height. The length of time it was in a defective condition was a matter of defense. Busby v. Railroad, 81 Mo. 47; Davis v. Railroad, 19 Mo. App. 430. (3) At defendant's request the trial court instructed that the only question to be determined by the jury was whether the mule entered upon defendant's right of way in consequence of the defects in said fence, and was struck and killed thereon. The jury found this issue in the affirmative and defendant is bound by the verdict. In this court it must adhere to the same theory pursued in the trial court and will not be permitted to shift its chosen position. Hall v. Goodnight, 138 Mo. 576; Guntley v. Staed, 77 Mo. App. 155; Pope v. Ramsey, 78 Mo. App. 157; Richter v. Merrill, 84 Mo. App. 150. (4) There was no error in refusing the demurrer to the evidence. There was abundant evidence to take the case to the jury. Harris v. Railroad, 89 Mo. 233; Dorsey v. Railroad, 83 Mo. App.

542.   (5)  Plaintiff's instructions are not subject to the objection that they are commentaries on the evidence.   Blackwell v. Hill, 76 Mo. App. 53, loc. cit., and cases cited.

BROADDUS, J.—This is an action to recover double damages on account of the killing of plaintiff's mule on defendant's railroad in the county of Cooper.  The allegations of the petition are, that the fence between the defendant's right of way and a public road was, and had been for a long time, in a defective condition, and that by reason thereof the mule in question entered upon the defendant's railroad at that place and was killed.   The answer was a general denial.

The evidence disclosed the fact that the mule was killed on the defendant's track at a place where defendant's railroad passed through the land of John Schlotzhauer, a brother of the plaintiff; that the public road was separated from the defendant's right of way by the defendant's fence; that in the vicinity or near by where the mule was killed there was a farm crossing for the use of John Schlotzhauer, with the usual gates, so far as the evidence shows; that shortly prior to the time the mule was killed, it was seen going in the direction of the gate at this crossing following a man on horseback, the latter travelling along the road; that soon thereafter the mule was seen on the right of way by John Schlotzhauer, who attempted to drive it off through the gate at the farm crossing, but that when he got there the gate was closed; and that at about this time a passenger train came along and the mule, which was then standing at the gate, suddenly ran in front of the engine and was killed.

There was evidence tending to show that the gates at the farm crossing were sometimes left open.   There was also evidence tending to show that the fence along the defendant's right of way next the highway was out of repair, the wires

Schlotzhauer v. M., K. & T. Ry. Co.

loose from the posts, and in its then condition not more than from two and one-half feet to four and one-half feet high, and that it had been in this condition about a month. Then, too, there was evidence to the effect that the fence was in good condition and no wires loose from the posts. It was also shown that this animal had been loaned to some persons who were engaged in fishing some miles from the home of plaintiff, who lived in the neighborhood where the mule was killed, and that it had gotten away from them; that it was on the highway following a stranger on horseback who was going in the direction of the farm crossing, and who had been endeavoring to drive the mule back so as to keep it from following him. It was not shown that there were any indications by tracks or otherwise that the mule had got on to the right of way through the alleged defect in the fence, but it was shown that the condition of the ground was dry at the time and that it was covered with grass at that point. These were substantially the facts upon which the case was submitted to the jury. The finding was for plaintiff for $140, which was doubled by the court, from which the defendant appealed.

One of the appellant's contentions is, that upon all the evidence the plaintiff was not entitled to recover and, therefore, the court was in error in refusing its demurrer to the evidence offered at the close of the plaintiff's case. It is contended that as there were no indications of tracks at the point of the defective fence, that the mule must have got on to the right of way through the gate in question. But as it was shown that just at the time the mule was found on the right of way the gate was closed, the defendant contends that it must have been closed after the mule passed through it, and that the stranger whom it was following, in order to prevent it from continuing to follow him, turned it through the gate and then closed the gate.

That the mule got upon the right of way through the gate or through the alleged defect in the fence is unquestionable. If it got in through the gate, which was a sufficient gate, the defendant was not liable. If through a defect in the fence, the defendant would be liable. Which theory is the most reasonable is to be determined by the evidence.

The fact that the gate was found shut just before the mule was killed and while it was on the right of way, and that it was seen a short while before following the stranger on horseback going in the direction of the gate, and that he was endeavoring to get rid of it, does not show conclusively that he opened the gate and turned it in and then closed the gate. On the contrary, such a presumption is not tenable, in view of the fact that the traveller proved by his action in trying to keep the animal from following him that he was thoughtful of the rights of the owner; and it would have been a strange inconsistency on his part to have driven it on to the right of way of defendant and fastened the gate upon it, where it was likely, as the sequel showed, to be killed. It would not do to infer that under the circumstances a person would be guilty of a wrong of the kind. On the contrary, the presumption would be to the contrary. In the absence of evidence to the contrary, the law presumes that the citizen at peace with the State is not committing a trespass upon the rights of his neighbor.

As has been said, the mule must have got in through the open gate or over the defective fence. Of this, there could have been no question. And while the fact was shown that there were no tracks found at the fence indicating that the mule went in there, the facts stated showing that the gate was closed indicating that he did not enter there would not prevent the plaintiff from recovering; and the jury were told that in order to find a verdict for the plaintiff it must find that the mule got on to the right of way by reason of the defective fence. The

evidence most strongly pointed to the cause of the injury being the alleged defect in the fence. If the evidence had been of such a character that a jury could not tell what caused the injury, an open gate or defective fence, the finding should have been for the defendant. And in such a case it would have been the duty of the defendant to have asked the court to so instruct the jury; but as no instruction of the kind was asked here, there can be no ground of complaint on that score.

The case cited by the appellant of Walton v. Railroad, 32 Mo. App. 634, does not support its theory that the demurrer to plaintiff's case should have been sustained. It was there held: "Had plaintiff's evidence shown that his cattle were killed at a point or points upon defendant's road where the fence along the south side was in the defective condition described by the witnesses, and *nothing further* under the authorities cited by the plaintiff, it might have been claimed that a prima facie case was presented." And the judge fortifies his position by the case of Ehret v. Railroad, 20 Mo. App. 251; Walther v. Railroad, 55 Mo. 271, and Fickle v. Railroad, 54 Mo. 219. But he goes on to show that they do not apply to the case he is considering, because the evidence showed conclusively that the cattle alleged to have got upon the defendant's right of way could by no means possible have had access to that part where the defendant's right of way was not fenced, but they must have passed through the gate as there was evidence tending to show that fact and as there was no controversy but what the gate was a lawful gate, he held that the demurrer ought to have been sustained.

The appellant complains at the action of the court, not in refusing, but in failing, to instruct the jury that before they could find for the plaintiff by reason of a defective condition of its fence, the plaintiff must show by evidence the company's knowledge of the defect, or that it had been in such a condition

for such a length of time that the defendant could, by the exercise of ordinary diligence, have ascertained its condition. Many cases are cited to support the position that before the plaintiff could recover he must show that defendant had notice of the defects in the fence, or that it had been in a defectice condition such a length of time as the law would presume notice, but none of them hold that the court is bound to instruct the jury to that effect unless requested to do so.   The judge is not bound to instruct a jury in a  civil suit unless asked.   Farmer v. Farmer, 129 Mo. 530; Nolan v. Johns, 126 Mo. 159.

In this case there was evidence tending to show that the fence had been defective for a' month and we are not, therefore, prepared to say that such a length of time was not sufficient to amount to a presumption of the existence of the defects.   This was evidence at least going to show notice.

Instructions one and two given at the instance of the plaintiff, it is claimed, are subject to the objection that they assume as true certain disputed facts in the case.   Instruction number one is as follows:

"The court instructs the jury that it was the duty of defendant to not only build, but to maintain a lawful fence (as defined in instruction number three) on the side of its right of way, and if the, jury shall believe from the evidence that defendant's fence at the point mentioned in evidence, to-wit: between mile posts 205 and 206, Cooper county, Missouri, was down so that said fence was not more than three or four feet high, then the court instructs the jury that said fence was not a lawful fence; and if the jury shall further believe from the evidence that plaintiff's mule passed over said fence where it was not more than two and one-half or· three feet high and was killed by defendant's locomotive," etc., they will find for the plaintiff.

We can not conceive upon what theory the court singled

out the fact that if the jury found that the fence was down so that it was not more than three or four feet high, that the fence was not a lawful fence, and if they found that the mule passed over said fence where it was not more than two and one-half or three feet high, when there was some evidence in the case that the fence was a lawful fence. And how the mule could have got over a fence that was three or four feet high where it was only two and one-half or three feet high must have been quite a problem for this jury. This instruction should never have been given. It must have got to the jury by inadvertence. Instruction number two is also bad for similar reasons. For the error noted the cause is reversed and remanded. All concur.